GILES et al. v. UNION LAND CO. et al. *
(No. 7085.)

(Court of Civil Appeals of Texas. Galveston. May 3, 1917.)

1. SPECIFIC PERFORMANCE ⟜95 — GOOD FAITH AND DILIGENCE—SUFFICIENCY OF TITLE OF VENDOR—MARKETABLE TITLE.

Where a contract for the sale of real estate required that the vendor should tender to the purchaser a title satisfactory to the purchaser's attorney, the purchaser was entitled to a marketable title, and before the vendor can demand specific performance of his contract he must not only tender a good title, but one clear of defects and incumbrances, since neither party to an executory contract can enforce specific performance by the other without showing that he has·

fully performed his part of the contract or is ready and able to do so.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 257–277.]

2. VENDOR AND PURCHASER ☞130(8)—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—"MARKETABLE TITLE."

Where various lots of land contracted to be conveyed were subject to eight judgment liens, another contract to convey, and two deeds of trust, *held*, that the vendor did not have a marketable title, which he could compel the purchaser to accept in a suit for specific performance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 246.

For other definitions, see Words and Phrases, First and Second Series, Marketable Title.]

3. VENDOR AND PURCHASER ☞136—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—SATISFACTION OF PURCHASER'S ATTORNEY.

Where a contract for the sale of real estate stipulates that the vendor shall furnish an abstract of title showing a title satisfactory to the purchaser's attorney, the purchaser will be justified in refusing to accept the title tendered if the attorney in good faith and not capriciously declares himself dissatisfied with such tendered title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 259.]

4. SPECIFIC PERFORMANCE ☞131—PROCEEDINGS—DECREE.

In a suit for specific performance of a contract for sale and purchase of land, a decree ordering specific performance by the purchaser, which did not determine and fix the purchase price to be paid, and cannot be made certain or definite without first ascertaining other and additional facts than those shown by the evidence or found by the court or jury, and which does not fix the amount to be paid by the purchaser to creditors of the vendor, and is not susceptible of being made uncertain and enforced by any writ of execution or other writ that may lawfully issue thereunder against the defendant, *held* too uncertain to be sustained.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 426–435.]

Appeal from District Court, Harris County; John A. Read, Judge.

Suit for specific performance by the Union Land Company and others against William Giles and others. Decree for plaintiffs, and defendants appeal. Reversed and rendered.

Fisher, Campbell & Amerman, of Houston, for appellants. Hutcheson & Hutcheson and Howard & Kendall, all of Houston, for appellees.

GRAVES, J. On May 20, 1911, W. C. Corbett executed and delivered to J. J. Sweeney his note for $22,500, due three years after date, bearing 9 per cent. interest, payable semiannually, providing for the usual attorney's fees, and also providing that failure to pay any installment of interest when due, or failure to pay all the taxes and assessments upon the land described in the deed of trust securing said note, should, at the election of the holder thereof, mature said note. At the time of the trial said note bore the following indorsement: "5/30/12 Paid a/c interest $500.00" To secure said

note, Corbett gave a deed of trust of even date therewith to William Giles, trustee, and George J. Mellinger, as alternate trustee, upon certain property situated in Harris county, Tex., described as follows:

"Twenty-six hundred and thirty-six acres of land, more or less, about 25 miles northwest from the city of Houston, near and adjoining the town of Cypress, and known as the 'Corbett Ranch,' said land composed of two tracts and surveys, as follows, to wit:

"First. That certain tract or parcel of land containing 1920 acres, more or less, known as the Evan Thomas survey, which was patented to the heirs of Evan Thomas, May 20, 1846, by patent No. 33, vol. 2, being abstract No. 775, which said patent is recorded in volume M, page 370, of the Deed Records of Harris county, Tex., and is here referred to.

"Second. That certain tract or parcel of land containing 713 acres, more or less, being the east half of that one-third of a league of land patented by the state of Texas to James Brewster, by patent dated September 6, 1848, patent No. 605, vol. 6, recorded in Volume 8, page 362, of the Deed Records of Harris county, Tex., to which reference is here made; save and except therefrom a tract of 25 acres out of the northwest corner of said east half of said James Brewster survey, described in the deed from F. J. Hartman et al. to John Mills, recorded in volume 110, page 63, of the Deed Records of Harris county, Tex.; and save and except therefrom a tract of 42 acres out of the northeast corner of said James Brewster survey described in deed from Fritz J. Hartman et al. to M. Solomon, recorded in volume 120, page 160, of the Deed Records of Harris county, Tex., to which reference is here made.

"Save and except from the above two tracts and parcels of land, however, the following lots, blocks, and farm lots, according to a plat and subdivision thereof made by the said W. C. Corbett and the Union Land Company, known as the 'Cypress Orchard & Garden Lands,' plat and subdivision made by J. S. Burke, civil engineer, and recorded in the office of the county clerk of Harris county, Tex., which said lots, blocks and farm lots have been conveyed and contracted to be conveyed to various parties by the Union Land Company, to wit: [Here follows a list of lots described by block and lot numbers.] Said lots aggregating in all 314.55 acres."

Said deed of trust also providing that failure upon the part of Corbett to pay all the taxes upon said land as assessed should mature the note, at the election of the holder, and providing that the trustee should receive a commission of 10 per cent. for making sale thereunder.

Of even date with the note first described, Corbett also executed and delivered to Sweeney another note for $8,750, due three years after date, containing all the terms and provisions contained in the other note, and at the time of the trial the same bore the following indorsements:

"11/29/11 interest paid to 11/30/11.
          interest paid to 5/30/12.
          interest paid to 11/30/12."

To secure this note Corbett gave a deed of trust to William Giles, trustee, and George J. Mellinger, as alternate trustee, upon various tracts of land, the first of which was described as follows:

"That certain tract or parcel of land lying and being situated in Harris county, Tex., and

being the survey of land known as the Samuel Young survey, patented to Samuel Young by the state of Texas by patent No. 243, vol. 7, dated February 6, 1861, and recorded in volume 11, page 3, of the Deed Records of Harris county, Tex., to which refer."

Prior to the time of said deed of trust Corbett had caused a map or plat to be made of the east half of the James Brewster survey and the whole of the Evan Thomas survey by J. S. Burke, showing a subdivision thereof under the following title: "Cypress Orchard & Garden Lands, a Subdivision of Corbett's Ranch, Being a Part of the James Brewster and Entire E. Thomas Survey," by which said entire tract of land was shown to be divided into town lots and blocks and farm lots, intersected by various streets and roadways indicated upon said map. The land included within such streets and roadways amounts to 149 acres. After this map was made, Corbett and the Union Land Company made numerous and various sales —at least 75 in number, to various parties and at various times—of lots and blocks and farm lots from the Evan Thomas and the east half of the James Brewster surveys, by reference and according to said map above referred to; such sales being evidenced by deeds. Corbett had conveyed to the Union Land Company the Evan Thomas east half of the Brewster and Samuel Young surveys, together with various other lands, by deed dated October 24, 1910, reciting a consideration of $1 and other considerations. The Union Land Company reconveyed the property described in the two deeds of trust above mentioned to Corbett, by deed dated June 15, 1911, the recited consideration being $25,000, and the assumption by Corbett of the payment of all liens existing upon said property.

The deed from Union Land Company to Corbett was authorized by a resolution of the board of directors of the Union Land Company, adopted June 15, 1911, and attached to the deed from the Union Land Company to Corbett was the declaration of W. C. Corbett, J. W. Woods, and K. H. Polk that they were all of the stockholders of the Union Land Company, and that Corbett owned 198 shares, J. W. Woods 1 share, and K. H. Polk 1 share of the capital stock of said company, and said stockholders ratified, confirmed, and joined in the deed from Union Land Company to Corbett. On June 15th, at the time of the execution and delivery of the two notes and deeds of trust above referred to, Corbett executed and delivered his sworn designation of homestead, reading as follows:

"I am the same W. C. Corbett who executed and delivered two deeds of trust dated May 30, 1911, conveying lands to William Giles, trustee, for the use and benefit of J. J. Sweeney, to secure my two notes executed and delivered to said J. J. Sweeney of even date with said deeds of trust, one in the sum of $22,500, and the other in the sum of $8,750; and I swear that I have never lived upon or used as my homestead any of the lands conveyed and described in said deeds of trust, or either of them, and have no present intention of ever so using or living upon any of said lands. I now live and use as my homestead, and claim as the homestead of myself and my wife the following described premises, in the city of Houston, Harris county, Tex., to wit: Lot ten (10), block six (6), outlot twenty-seven (27), Holman addition, South side.

"[Signed] W. C. Corbett.

"Subscribed and sworn to before me by said W. C. Corbett this 15th day of June, A. D. 1911.          [Signed] J. W. Woods.

"[Seal.] Notary Public, Harris County, Texas."

During the negotiations of Corbett for the loan from Sweeney, evidenced by the notes and deeds of trust above mentioned, Mr. Sweeney employed his attorney, E. R. Campbell, to examine and pass upon the title of said lands, and he pointed out a number of objections to and defects in the title to the James Brewster and Evan Thomas surveys, and refused to approve the title of the same, and in order to get said loan, Corbett then procured the Houston Title & Guaranty Company to guarantee to Mr. Sweeney the title of said lands to the extent of $22,500; such certificate of guaranty being dated June 15, 1911. On December 30, 1911, Corbett reconveyed to the Union Land Company the east half of the James Brewster and Evan Thomas and the Samuel Young surveys for a consideration of $10. On May 2, 1912, by written assignment, Mr. Sweeney transferred and assigned to William Giles the two notes of Corbett first above mentioned, together with the liens securing the same. On July 16, 1912, Corbett was in default in the payment of interest which was due upon the $22,500 note on May 30, 1911, and had also allowed the taxes upon said Brewster and Thomas surveys to become delinquent. Because of both defaults, William Giles elected to mature said note, placed the same in the hands of his attorneys, Fisher, Sears & Campbell, for collection, and authorized the alternate trustee, George J. Mellinger, to advertise said property for sale on the first Tuesday in August, 1912, all of which is shown by letter from William Giles to Corbett, dated July 16, 1912, giving notice thereof.

The alternate trustee, George J. Mellinger, advertised the sale of the property described in the $22,500 deed of trust to take place on August 6, 1912, and upon August 3, 1912, W. C. Corbett and wife, Ella Corbett, filed suit in the Eleventh district court against J. J. Sweeney, William Giles, and George J. Mellinger, setting out the $22,500 note above referred to and the deed of trust securing same, copying verbatim the description of the land contained in said deed of trust, and then alleged that the property described was the separate property of Ella Corbett, and that such fact was known to Sweeney at the time he accepted the deed of trust, and also alleging that they were entitled to a homestead reservation of 200 acres out of said

described property, and that Sweeney well knew of their right to such exemption in said property when he accepted said deed of trust, and pleading such exemption to the extent of 200 acres "in the above-described property." Said petition further alleged that unless restrained, the defendants would sell said property on August 6, 1912, and prayed for an injunction restraining such sale, and for general relief; the petition being sworn to by both W. C. Corbett and his wife.

Corbett and wife filed a supplemental petition in said cause on September 25, 1912, sworn to by W. C. Corbett, in which no change was made in the allegations as to the lands out of which Corbett and wife were claiming 200 acres as their homestead. A temporary injunction was issued in this case restraining said sale, and upon September 25, 1912, the case was heard on defendants' motion to dissolve the temporary injunction, and a full hearing of the case having been had before the court upon oral testimony, the court, on September 28, 1912, dissolved the temporary injunction theretofore issued, to which judgment Corbett and wife excepted and gave notice of appeal, and the court suspended the dissolution of the injunction pending the appeal, upon Corbett paying into the registry of the court, for the use and benefit of William Giles, the sum of $2,000 in cash, on condition that the same should be paid to said Giles and applied as a credit upon the $22,500 note in the event that said judgment should be affirmed or said appeal not perfected.

The Union Land Company filed petition for intervention in said injunction suit, setting up claim to the land in controversy, and alleging that the conveyance from it to Corbett and the deed of trust from Corbett to Sweeney were fraudulently made, and with knowledge upon the part of Sweeney that the same were fraudulent, and joining in the prayer of the plaintiffs for an injunction against the sale of said land under said deed of trust. The court refused to permit the Union Land Company to intervene, but by agreement of all parties its petition of intervention was considered by the court as an independent application upon its part for temporary injunction to be considered and determined in connection with the application of Corbett and wife, and the judgment of the court also denied the application of said Union Land Company for injunction, to which it excepted and gave notice of appeal. The Union Land Company did not perfect its appeal, but Corbett and wife paid into the registry of the court $2,000 in cash under the conditions of the judgment, and perfected their appeal from the order dissolving the temporary injunction. Such appeal was considered by this court, and the order of the trial court dissolving said temporary writ of injunction was affirmed by opinion filed November 9, 1912, and will be found recorded in 151 S. W. 858. Reference to the opinion in this case will show the issues which were raised therein, and the evidence which was offered in support thereof, and will aid in a better understanding of the history of this litigation. Corbett and wife sued out an application to the Supreme Court for writ of error to the Court of Civil Appeals in said cause, which application was refused. On December 26, 1912, William Giles and W. C. Corbett entered into the following contract:

"Houston, Tex., December 26, 1912.

"Mr. Wm. Giles, City—Dear Sir: With reference to the matter which you have had in hand with Mr. D. F. Rowe, I make the following propositions:

"(1) Will convey you the Sam Young survey of 794 acres, and all of the Evan Thomas survey, and east one-half of James Brewster survey, covered by deed of trust dated May 30, 1911, to J. J. Sweeney, on 2,322.55 acres, except the following: Town lot 11, block 26; town lots 1 to 8, inclusive, block A; town lot 13, block C; town lots 1 to 15, inclusive, block D; town lot 18, block 19; town lots 19 and 36, block 21; town lots 1 to 18, inclusive, block 23; town lots 22 to 29, inclusive, block 23; town lots 31 and 32, block 23; town lots 1 to 40, inclusive, block 11; town lots 21 and 22, block 9. All the above lots being 25 by 100 feet, and totaling 5.62 acres. Farm lot 28, being 10.235 acres; farm lot 29, being 10.25 acres. The total of the above being 26.12 acres of land. The above being according to map made by J. S. Burke, of the Union Land Company, of the subdivision of Corbett's Ranch at Cypress, Tex. The title to which is in the Union Land Company, and quitclaim to be executed in addition thereto by W. C. Corbett and wife; acreage and title to be subject to approval of E. R. Campbell, Attorney.

"(2) You to pay for said lands the sum of $15 per acre, payable in the manner hereinafter mentioned.

"(3) First deduct the amount mentioned in the foregoing deed of trust of $22,500, with accrued interest, attorney's fees, and costs of court; also the lien of $4,750, dated May 30, 1911, against 794 acres, the interest upon which is paid to November 30, 1912, together with interest thereon from said date of November 30, 1912. You to convey to me lot 12, in block 216, of the city of Houston, and improvements thereon, south side of Buffalo bayou, on Prairie avenue, for a consideration of $3,500, which, added to the two liens aforesaid, and accrued interest, are to be deducted from the total purchase of the said lands, and the balance to be paid in cash.

"(4) All taxes, including the year 1912, to be paid by the Union Land Company.

"(5) W. C. Corbett is to be released from the lien as to the 10 sections of land in Crockett and Upton counties, Tex.

"(6) The interest upon all obligations hereinabove mentioned to be calculated to January 5, 1913.

"(7) The map aforesaid made by J. S. Burke it is to be recorded at the expense of W. C. Corbett.

"(8) W. C. Corbett is to have the right to have printed or copied the abstracts of the Evan Thomas and James Brewster surveys in Harris county, Tex., for the purpose of delivering same to the parties purchasing the aforesaid excepted tracts.

"(9) The money deposited with Minor Stewart or the Houston Title & Guaranty Company to be returned to W. C. Corbett, as well as the $2,000 deposited in the suit of Wm. Giles v. W. C. Corbett, in the district court of Harris county, Tex.

"(10) This proposition to be accepted at once, and to be closed on or before January 10, 1913.
"Union Land Co.,
"By W. C. Corbett, Pres.
"W. C. Corbett.
"I accept the foregoing contract.
"Wm. Giles."

The abstracts showing title of the land covered by said contract, which were delivered to Giles' attorney, E. R. Campbell, bore the following certificates as to dates: The last supplemental abstract on the Samuel Young survey was completed and certified by the abstracter on January 17, 1913. The supplemental abstract on said Samuel Young survey last previous to the one above referred to was completed and certified by the abstracter on November 29, 1912. The last supplemental abstract on the Evan Thomas survey was completed and certified by the abstracter on January 18, 1913. The supplemental abstract on the Evan Thomas survey last preceding the one above mentioned was completed and certified by the abstracter on June 21, 1911.

One of the first demands made by Giles and his attorney, E. R. Campbell, for the purpose of determining the acreage and title of said land was that the same should be surveyed by some surveyor satisfactory to Mr. Giles. Appellants contend that Corbett would never agree to have such survey made; but appellees contend that Corbett at first refused to have such survey made, but afterwards upon the promise of Mr. Giles to pay one-half of the expenses of the same, that Corbett agreed to have the survey made. Such survey, however, has never been made. The abstract of the Samuel Young survey, when delivered, showed the following contract, which was of record: Contract dated October 25, 1912, between L. W. Dallas, O. C. Glasscock, and John W. Jump, and W. C. Corbett, by which Corbett agreed to sell and convey to the other named parties the Samuel Young survey, in exchange for other property, the contract providing that all parties would convey by general warranty deed on or before 90 days from date of the contract.

About one month after said contract of December 26, 1912, to wit, on January 24, 1913, suit was filed in the district court of Harris county by O. C. Glasscock, John W. Jump, L. W. Dallas, and C. M. Gentry, against W. C. Corbett and the Union Land Company, setting out the contract last above referred to, alleging that thereby Corbett had agreed to convey to him "that certain tract or parcel of land lying and being situated in Harris county, Tex., containing 780 acres of land, more or less, which was originally granted by the state of Texas to Samuel Young, patent No. 243, vol. 7, abstract No. 942." They alleged that they were ready, able, and willing to comply with said contract, and had tendered to Corbett deeds conveying the land owned by them, but that he had failed and refused to perform his part

of said contract. They alleged that although Corbett had theretofore conveyed said land to the Union Land Company, that the same was in the absolute control of the said Corbett, that he was the sole stockholder of said Union Land Company, and was in fact said Union Land Company, and that he had conveyed said land to the Union Land Company solely as a matter of personal convenience, and he could execute in behalf of said Union Land Company, or cause said Union Land Company to execute a conveyance of said land to them at any time he so chose to do; and their prayer was that the defendants Corbett and Union Land Company be required to execute and deliver to them conveyance of said Samuel Young 780-acre tract in specific performance of said contract; the petition being signed by John G. Tod as attorney for plaintiffs. The above suit was still pending at the time of the trial of the cause at bar.

On January 24, 1913, notice of lis pendens was filed in the office of the county clerk of Harris county, in compliance with statute, showing pendency of the above suit, and that the same affected the Samuel Young survey. The abstract of the Evan Thomas survey furnished to Giles showed the following instrument, which was of record: Deed from T. D. Rand to W. C. Corbett, dated December 10, 1900, conveying 659⅔ acres of land out of the Evan Thomas survey, in consideration of $1,319.32, $329.83 of which was cash, and the balance evidenced by three notes of $329.83 each, due one, two, and three years after date, all bearing 8 per cent. interest, and providing for 10 per cent. attorney's fees, and retaining a vendor's lien upon the land conveyed to secure the payment of said notes. A release of this lien was executed by Alice Rand Aldridge, dated June 30, 1913, and filed for record August 23, 1913. The abstracts of title to the Evan Thomas and James Brewster surveys furnished to Giles January 17 or 18, 1913, showed the following instrument, which was of record: Deed of trust from W. C. Corbett to Minor Stewart, trustee for the Houston Title Guaranty Company, dated June 17, 1911, to secure note of Corbett to said Houston Title Guaranty Company for $10,000, dated June 17, 1911, due one year after date, without interest, but providing for 10 per cent. attorney's fees, conveying the Evan Thomas and the east half of the James Brewster surveys, which was unreleased at the time of the trial hereof.

The abstracts showed the following judgments against W. C. Corbett, properly abstracted and recorded, of the dates and for the amounts as follows: In favor of Presley K. Ewing for $263, dated October 7, 1911, and recorded October 10, 1911. In favor of Houston Printing Company for $196.70, dated October 9, 1911, recorded October 25, 1911. In favor of Standard Paint & Wall Paper Company, for $232.99, dated Febru-

ary 6, 1912, recorded February 8, 1912. In favor of S. D. Horton for $96.40, dated May 31, 1912, recorded May 31, 1912. In favor of H. D. Taylor Lumber Company for $84.80, dated October 11, 1912, recorded October 29, 1912. In favor of H. D. Taylor Lumber Company for $81.30, dated November 12, 1912, recorded November 25, 1912. In favor of Arthur Capper for $103, dated November 18, 1912, recorded December 9, 1912—all of which were unreleased at the time of the trial hereof.

About April 10, 1912, alias execution was issued under the judgment in behalf of the Standard Paint & Wall Paper Company against W. C. Corbett, and levied upon the Young, Thomas, and Brewster surveys as the property of Corbett, and thereafter, on May 6, 1912, the Union Land Company, acting through W. C. Corbett as its president, filed suit in the district court of Harris county against said Standard Paint & Wall Paper Company and Fred Erickson, constable, to enjoin the sale of said land under said execution, alleging that the land belonged to said Union Land Company, which suit was still pending at the time of the trial hereof. By deed dated August 17, 1910, the Union Land Company conveyed to C. M. Diehl "town lots Nos. 1, 2 and 3, in block 20, in South Cypress, Harris county, Tex., being out of the Corbett Ranch, and known as the Cypress Garden & Orchard Land subdivision, composed of the Evan Thomas and east part of the James Brewster surveys, said land being fully shown and set forth in map made by J. S. Burke."

The state and county taxes upon the Samuel Young survey for the year 1912, and upon the Evan Thomas and east half of the James Brewster surveys for the years 1911 and 1912, were never paid, and on August 20, 1913, suit was filed to recover the same in the amount of $482.48, and thereafter judgment was rendered in said suit against W. C. Corbett and the Union Land Company for the amount of said taxes, and foreclosing the tax lien, which judgment was unsatisfied and lien unreleased at the time the case at bar was tried. The acreage and title of the land described in the contract between Giles and Corbett, above referred to, was never approved by Giles' attorney, E. R. Campbell, and in the first part of March, 1913, George J. Mellinger, alternate trustee, again advertised for sale under said deed of trust the land described in the deed of trust securing the $22,500 note. On March 27, 1913, the Union Land Company filed this suit against William Giles and George J. Mellinger, setting up the deed of trust upon said land, and the contract of Giles to purchase the same, and praying for an injunction restraining the sale under said deed of trust, and for decree of specific performance against Giles under said contract. A writ of temporary injunction was issued March 31, 1913, enjoining sale under the said deed of trust,

and on February 2, 1915, W. C. Corbett intervened in said suit, and together with the Union Land Company filed their first amended original petition.

Plaintiffs alleged that the Union Land Company was the owner of the Thomas and Brewster surveys, and conveyed the same to Corbett for the purpose of enabling him to borrow money thereon from Sweeney, who had as his agent the defendant Giles; that said land was mortgaged to Sweeney to secure said note, and that Corbett then reconveyed said property to the Union Land Company; that about June 5, 1912, plaintiffs paid to Sweeney $500 to apply upon the interest due on said note, with the understanding that they should have 90 days within which to pay the balance of the interest due, and before the expiration of said 90 days Giles procured Mellinger, the alternate trustee, to advertise said property for sale under said deed of trust; that on August 2, 1912, plaintiffs stated to Giles that they were ready and willing to pay the balance of the interest then due on said note, together with the taxes on said property, but that he refused to accept the same unless the whole of said note, including attorney's fees, was paid; and that plaintiffs have always since said time been ready and willing to pay the interest on said note and the taxes on said land.

Plaintiffs then set out the contract made with them by Giles dated December 26, 1912, for the purchase of said land, and alleged that they have at all times been ready and willing to comply with said contract, but that Giles has failed and refused to perform his part thereof; that Giles, with the intention to oppress plaintiffs and to cause them to sacrifice their equity in said land, and to procure title thereto at a much cheaper price than he contracted to pay them for the same, and notwithstanding his contract to purchase said land, caused Mellinger, the alternative trustee, to again advertise for sale under said deed of trust, to take place on April 1, 1913. Plaintiffs then set out the execution of the $8,750 note by Corbett to Sweeney, and the deed of trust to secure the same, upon the Samuel Young survey and other property; that the taxes upon said lands have not been paid, but that Giles has in his hands and possession approximately $500 belonging to plaintiffs, which he has been authorized to use for the payment of said taxes; that the interest on the $8,750 note became due on May 30, 1913, and the same will probably mature and become due during the pendency of this litigation; that if the terms of said contract of purchase had been carried out by Giles, the said indebtedness secured by the Samuel Young survey would have been taken care of and plaintiffs would have been released and discharged therefrom.

Plaintiffs prayed for writ of injunction restraining Giles from maturing or attempting

to mature the $8,750 note for nonpayment of taxes, or for any other cause during the pendency of this suit, and from selling or attempting to sell any of the lands and premises described in both of said deeds of trust during the continuance of this litigation, and that upon final hearing they have judgment for specific performance of said contract of purchase by said Giles, and, in the alternative, that they be permitted to pay the interest on said $22,500 note, and that Giles be enjoined from maturing the same.

Defendants answered by general demurrer and specific denial of various of the allegations of plaintiffs' petition, especially denying that either the said Giles or the said Sweeney had in his possession any money of the plaintiffs which the said Giles was authorized to use for the payment of taxes upon land, or for any other purpose, but said that on or about May 30, 1912, Corbett paid to Giles $500, which was credited upon the sum of $1,012.50 interest then due and owing by Corbett upon said $22,500 note, and that there was no agreement of an extension of time within which the balance of said interest should be paid; that the defendant Giles was an innocent purchaser and holder of said note for value and before maturity; that only the sum of $500 had ever been paid upon the interest of said note, and that the taxes upon said land for the years 1911 and 1912 had been allowed to become delinquent, and had never been paid, and that because of the default of Corbett in the payment of the interest due on said note, and the taxes upon said land, Giles had elected to declare said note due and payable in its entirety, and had requested Mellinger, the alternate trustee, to advertise and sell said land under the terms and provisions of said deed of trust, for the satisfaction of said note; that the said Mellinger was only acting under and by virtue of the terms of the said deed of trust, upon the request of said Giles as the present owner and holder of said note. They further said that the value of said land involved was not more than $34,000 at the time plaintiff's petition was filed, and was then much less than that amount, and that Corbett had several times during the year 1912 offered to take and accept the sum of $15 per acre for said land, which was the reasonable value thereof at the time, but that the value thereof then was much less. Defendants then set out the deed from the Union Land Company to Corbett dated June 15, 1911, together with a joinder therein by the stockholders of said Union Land Company, and the resolution passed by the directors of said company, and alleged that the said Sweeney and the said Giles had no knowledge of the actual transaction occurring between Corbett and the Union Land Company, other than as shown by said documents, and that the Union Land Company, its officers, directors, and stockholders, knew that Corbett was acquir-

ing title to said land for the purpose of procuring the loan from Sweeney upon the strength thereof; that Sweeney accepted said note and deed of trust, and Giles acquired the same of Sweeney, giving full faith and credit to the validity and good faith of said proceedings between Corbett and said Union Land Company.

The defendant Giles admitted the execution of the contract of December 26, 1912, between himself with Corbett and the Union Land Company, but said: That the plaintiffs had never complied with the same, and that the time within which same was to be performed has long since expired, and that the same had been mutually recognized by and between the parties as of no further force and effect. That one of the first demands made upon plaintiffs under said contract was for the survey of the lands by a surveyor acceptable to Giles, and that it was not possible to ascertain and determine the acreage of the lands described in said contract without such survey, but that the plaintiffs had at all times failed and refused to procure a surveyor acceptable to Giles to survey said lands and make report thereof. That there were certain defects in the title of plaintiffs to said lands, and certain matters affecting the title to said lands and the market value thereof, which were at all times known to the plaintiffs, and which were pointed out to them by Giles and his said attorney, which were necessary to be remedied and cured before they could convey to Giles a good, clear, marketable title to said lands, among said defects and matters affecting said title being all the liens, trust deeds, deeds, judgments, etc., before mentioned as appearing from the abstract, of the lands furnished. That the Union Land Company was the creature of Corbett, dominated and controlled entirely by him, for his own ends and purposes, all of the capital stock of which was owned by him, except one share in the name of J. W. Woods, who was formerly one of the numerous attorneys representing said Corbett, and another share in the name of K. H. Polk, who was formerly an employé of said Corbett, and for which neither of said persons paid any consideration. That the entire assets of said corporation consisted of lands conveyed to it by Corbett, without consideration, and that Corbett caused said corporation to be chartered and conveyed all of his lands to it for the purpose of defrauding, hindering and delaying his creditors in placing his property beyond their reach, by and through the use of said corporation and its name, and used the name of said corporation as a cloak under which to conceal his property from his creditors and from their demands, and the satisfaction of their judgments. That being substantially the sole stockholder of said corporation, and having unrestricted direction and control of the same and its property, he was in effect the owner

and possessor of said corporation and its property, and did himself in fact constitute said corporation, and used the same merely as an agent and means in his hands by which to manipulate his property for the purpose of hindering, delaying, and eluding his creditors, which was indicated by the litigation in this cause and the precedent history thereof.

Defendants then set out the history and result of the suit of Corbett v. Sweeney in the Eleventh district court, which has been heretofore referred to, and then allege: That the same was filed and prosecuted and appealed purely, openly, and confessedly for the purpose of delaying and preventing the defendant Giles from collecting the amount due upon said note, and that having failed in his own name and in the name of his wife, whom he induced to join in said suit for the purpose of defrauding said defendant, he has now caused this suit to be instituted in the name of his creature, said Union Land Company, in a desperate and last endeavor and attempt to further hinder and delay the defendant from the collection of his just debt. That the deed of December 30, 1911, by which Corbett conveyed to the Union Land Company all of the land described in the contract with Giles of December 26, 1912, as well as all the other land owned by him and in the name of said Corbett, was wholly without consideration and for the purpose of hindering, delaying, and defrauding his creditors, who were plaintiffs in the judgments heretofore referred to, some of which had then already been obtained against him and suits to recover in others had already been filed and were pending, and in reference to the remainder, the causes of action upon which the suits were afterwards instituted had already accrued. That as to all of such creditors the deed from Corbett to the Union Land Company referred to was of no force and effect, and the said judgments, as soon as abstracts thereof were filed, constituted, and did then constitute, liens upon the interests of said Corbett in said lands, and defects and clouds upon, and objections to, the title thereof, because the substantial title and interest of the same had at all times been owned and held by said Corbett. That all of the matters, facts, and conditions above mentioned affecting the title to said lands existed at and prior to the time of the contract of December 26, 1912, and were well known to the plaintiffs and still constituted defects in, clouds upon, and objections to, the title of said lands which were not and had never been cured or overcome, and for such reasons the title thereto was not a good, marketable one, and that said E. R. Campbell would not and had not, and could not then, approve the title of the plaintiffs to said land by reason thereof, and therefore the said Giles cannot be forced to accept said land and said title under said contract. That

the plaintiffs at the time of said contract of December 26, 1912, represented to Giles that the exceptions in said contract made from the total acreage therein referred to did not include the two-story dwelling house and improvements incidental thereto which were situated upon and a part of said two surveys, but that the land referred to in said contract other than the exceptions included the land upon which said dwelling house and the incidental improvements were situated; and fraudulently induced him to believe that said improvements and the house upon which the same were situated were so included, which was a moving consideration to him to enter into said contract, as was well known to plaintiffs, and that he relied upon said representations and made said contract under the belief that he was contracting to purchase said improvements, and that it had then developed that the plaintiffs fraudulently excepted from the land covered by said contract that portion thereof upon which was situated said improvements, and that the same were not included in the land contracted to be conveyed therein. That after the default of the plaintiffs in complying with the contract of December 26, 1912, and after the same had been declared forfeited and recognized as of no further force and effect, plaintiffs took up with Giles negotiations for the purpose of bringing about a new contract for the purchase and sale between the parties, and all of the parties treated the first mentioned contract as of no further force and effect, but that no contract was ever executed as a result of said later negotiations.

By plaintiffs' supplemental petition they admitted: That under the contract the acreage and title of said land was to be subject to the approval of E. R. Campbell, attorney, but they said that said provision implied that the said Campbell, in passing upon the same, should act in good faith and use nonpartisan, unbiased judgment as an attorney, and that acting in such manner he at first approved said title, but that later, learning that it was the purpose and desire of Giles to procure other land owned by the plaintiffs, and not to perform his said contract unless he could also procure such additional land, the said Campbell, mistaking his position of a nonpartisan, unbiased arbiter, took the position of a partisan attorney for the defendant Giles, and began to raise immaterial and petty objections to said title, and to assert that liens and claims against the property which it was contemplated were to be paid off and discharged out of the purchase money were defects to the title, and mistaking his position and conceiving it to be his client's interest, failed to act in good faith in reversing his conclusion and attitude towards such title from what it was when he thought the said Giles desired to take said land. That prior to the time when said contract should have been performed under its terms, said

Campbell pointed out no objections whatever to said title, and having failed to do so prior to January 10, 1913, plaintiffs became entitled to have such contract performed. That at such time they were able, ready, and willing, and had ever since been, to deliver a good title to said land and premises; that the said Campbell had never, either prior to January 10, 1913, nor since, set forth his objections to said title, but had simply from time to time suggested and set up certain things that he claimed affected said title in order to avoid a performance of said contract on the part of Giles, and his refusal to approve said title was not in good faith. That plaintiffs had always offered to have said land surveyed as soon as Giles notified them that he was ready to close said contract and accept and purchase the land mentioned in said contract. That the judgment liens referred to in defendant's answer were known to both parties at the time of the contract, and it was contemplated by all the parties that such liens should be paid off out of the purchase money, and that same could and would have been deducted from the purchase price, but the said Giles failed and refused to pay off the same and deduct the amounts thereof from the purchase price, because he had determined to oppress the plaintiffs and use his power as a large creditor to compel plaintiffs to convey to him other lands in addition to those covered by the contract. That in reference to the Rand lien on 659⅓ acres of the Thomas survey, Giles knew all about the same at the time of the contract, and that at the time the said notes and deeds of trust were executed, he, acting for said Sweeney, deducted $1,000 from the amount of said loan, which was deposited with the Houston Title & Guaranty Company, for the purpose of paying off said lien, and caused Corbett to procure an agreement from the Houston Title & Guaranty Company that it would guarantee Sweeney against said lien, and would use said $1,000 for the purpose of discharging and paying off said lien, and thereafter Corbett was entitled to look to said Giles and the Houston Title & Guaranty Company to pay off and discharge said lien, and Giles ought not then to assert said lien as a defect in the title of said land, and, further, that it was contemplated by the parties at the time of said contract that any liens against said premises should be paid off out of the purchase money coming to plaintiffs under said contract, and said lien had in due course been paid off out of the money so levied and deposited with the Houston Title & Guaranty Company, and said lien had been fully released. That the deed of trust for $10,000 to Minor Stewart, trustee, had been given to indemnify the Houston Title & Guaranty Company against liability under its contract guaranteeing the title of said lands to Sweeney under said $22,500 mortgage, and by the terms of said contract said Houston Title & Guaranty Company would, upon the conveyance of said lands to the defendant Giles, be released from all liability of every kind by reason of the said contract of guaranty, and the obligation which the deed of trust was given to secure will thereupon be automatically discharged, and the Houston Title & Guaranty Company and Minor Stewart, trustee, would then be required to release said lands from said deed of trust. That the contract of Corbett with Dallas, Glasscock, and Jump upon the Samuel Young survey did not affect the title to said land, because the same had been made by Corbett in his individual capacity, acting only for himself, and the title of said land at the time stood in the Union Land Company, and, furthermore, that said contract did not describe any land owned or claimed by the Union Land Company by name or description. That the said contract had expired by the agreement of the parties long prior to the contract of December 26th, and had been abandoned by the parties, and that for such reasons the same did not constitute a cloud upon or valid objection to the title of plaintiffs to said land. That the objection, because of the contract last above mentioned, was never asserted as a defect until after January 10, 1913, and was not seriously asserted thereafter for the reason that defendants' attorney proposed that if plaintiffs should pay him $250 for procuring a foreclosure of the deed of trust upon said Samuel Young survey, thereby cutting off all claims subsequent thereto, they would accept the title, to which proposition the plaintiffs agreed. That plaintiffs could procure a release from Glasscock et al., by the payment of $350, and would have done so had not the defendants refused to go on with said contract. That Giles well knew at the time of said contract that the land described therein had been subdivided and platted, and that sales had been made in reference thereto, and that said contract referred to the map of such subdivision and certain sales that had theretofore been made by the plaintiffs of both town lots and farm lots, and he thereby acquiesced in such subdivision and waived any objection to the title by reason thereof, and was then estopped from asserting that the deduction of the streets and roadways over said land constituted any defect in said title.

In reference to the various judgments against the said Corbett, plaintiffs admitted the same, but said that it was well known to Giles when he entered into said contract that said judgments were against the said Corbett, and it was contemplated by the parties that the same should be paid off out of the purchase money coming to plaintiffs under said contract. That while the title to the said land stood in the name of the Union Land Company, and said judgments did not constitute a lien upon the land, yet the plaintiffs offered to have the amount of the judgments deducted from the purchase price, and

they then offered to have the amount of any judgment against either of them deducted from the purchase price, which would be more than sufficient to pay off all of said judgments and all other indebtedness of plaintiffs which could in any way operate as a lien upon said land. They denied that Corbett had used, or then used, said Union Land Company, or that he conveyed all of his property to it for the purpose of hindering, delaying, or defrauding his creditors; that since the contract of December 26, 1912, the said Corbett had been making payments on and reducing said judgments against him as fast as he had been able to do in the crippled financial condition in which he had been by reason of the acts of oppression and repudiation upon the part of said Giles. They admitted that they knew of all of the matters set out in defendants' amended answer, and the alleged defects in and objections to said titles, but that the defendant Giles also well knew of them, and they denied that the matters constituted defects in said title, but said that they were mere money demands that could and would have been deducted from and paid out of the purchase price of said land, which it was contemplated by the parties should be done had Giles complied with said contract; that long after the time when the said contract should have been closed according to its terms, the said Campbell suggested to plaintiffs that if they would pay him the sum of $250 in addition to the large and exorbitant fees that were taxed on the notes when the indebtedness was matured, he would sell out the Samuel Young survey under the deed of trust, in order to eliminate any possible claim under the Glasscock and Jump contract, to which proposition the plaintiffs agreed. They denied that they ever agreed to include in the sale the improvements referred to in defendants' answer, and the land upon which the same was situated, and that they ever represented to the defendants that the same was included in the terms of the deed of trust, or in the contract of December 26, 1912, and they said that said contract specifically included all of the lands covered by the deed of trust, with certain exceptions named in said contract, and that the said Giles handled the making of said deed of trust as the agent of Sweeney, and was the trustee named therein, and knew the contents of said deeds of trust, and the land described therein, as also did his attorney, who prepared the same. They denied that said contract of December 26, 1912, had been forfeited or in any manner waived by plaintiffs, or that the parties had ever treated the same as of no further force and effect, but that from the time of said contract until the time the same was to have been performed, on January 10, 1913, they continually endeavored to have the defendants perform said contract, and tendered to them a deed conveying said land. They ad-

196 S.W.—21

mitted the deed from the Union Land Company to C. M. Diehl, dated August 17, 1910, conveying lots 1, 2, and 3 in block 20, and that said lots 1 and 2 were included in the contract, but they said that at the time of said deed of trust, and at the time of making said contract, the said Giles knew that said lots had been conveyed, because his attorney had before him the abstract of title showing that the same had been conveyed, and that the reference to said objection in defendants' pleadings clearly showed that the said Campbell did not act in good faith in failing or refusing to approve said title; that said lots constituted a very small part of the lands covered by said contract, and plaintiffs could and would, if defendants had insisted upon the same, have repurchased said lots and conveyed the same to the defendants, but that they were then making no claim to be paid for said lots, and offered to allow any amount that the court may see fit in lieu thereof.

Plaintiffs alleged that the objections to the title as then urged by defendants in their pleadings were not urged as real or valid objections to the same, but were merely used as pretexts or excuses to furnish the basis of extorting from plaintiffs a new contract, whereby they would be compelled to deliver to the defendants more land than was agreed upon between them, and that the sole reason for such pretended objections as then made was because an additional ten acres of land is desired by the defendants to be included in said contract. Then followed allegations that the said Giles is the general agent, factotum and alter ego, of J. J. Sweeney, a man of large wealth and means, who was engaged extensively in loaning money, and a repetition of the allegations in plaintiffs' amended petition that plaintiffs had paid to Giles $500 interest upon the $22,500 note, with an agreement and understanding that 90 days' extension should be allowed within which to pay the remainder of said interest, and that Corbett, relying upon such agreement, had left for Kansas City, and that while he was absent from the state, Giles declared said note due and payable, and caused said land to be advertised for sale under said deed of trust, in furtherance of his scheme to procure said property, in pursuance of which scheme he had acquired said notes from the said Sweeney, and forced the said Corbett to resort to said injunction suit, which has been above referred to, and prevented plaintiffs from making a sale of said land when they had secured a purchaser therefor, and that Giles took said course because he knew that it would be difficult, expensive, and disastrous for plaintiffs to carry on litigation in order to prevent the wrongful sale of said property under said deed of trust, and that it was under pressure of such circumstances and conditions that plaintiffs were induced to enter into the contract of December 26,

1912, by which they agreed to sell said land to him at $15 per acre.

Plaintiffs offered to do equity, and offered to have deducted from the purchase price all amounts that could in any way operate as a lien or charge upon said lands, and offered to perform any conditions that the court may impose upon them as a condition to obtaining a performance of said contract upon the part of said Giles. They prayed for judgment, decreeing that Giles should perform and carry out the said contract, and for judgment against Giles for the full purchase price of said land at the rate of $15 per acre, together with interest upon the balance that would be coming to them from January 10, 1913, and that he be required to convey to them said lot in the city of Houston wh' by the contract he agreed to convey, and for judgment for the reasonable value of the use and rent of said house and lot from January 10, 1913, and general relief.

By defendants' supplemental answer they urged general and various special exceptions and specially denied as made all the above-recited allegations of plaintiffs. Defendant Giles admitted that he knew of the Rand lien at the time of the execution of said $22,-500 note, and the mortgage upon said land securing the same, but he denied that either he or the said Sweeney deducted from said loan any amount for the purpose of paying off the Rand notes and releasing such lien, but said that at the time said loan was made the said Sweeney waived a number of objections to the title of said land in consideration that Corbett should and did procure the Houston Title & Guaranty Company to execute to him, the said Sweeney, a contract of guaranty, guaranteeing the title of the lands covered by said mortgage, and that whatever amount was withheld to cover said Rand lien, was demanded, withheld, and retained by the Houston Title & Guaranty Company for the purpose of protecting itself against liability under said guaranty of title, and neither the said Sweeney nor Giles were concerned therein or had any supervision or control over said deposit, and thereafter had no concern, as far as said mortgage lien was concerned, as to whether or not said Rand notes were ever discharged and said lien released, and they did not make any agreement by which they undertook to discharge and have the same released; that the contract of December 26, 1912, provided that the money so deposited by Corbett with said Houston Title & Guaranty Company should be returned to him, and therefore it became very material and important that the said Giles and his attorney should demand and require, as they did, a release and discharge of said Rand lien before purchasing said land, and that they acted in good faith in demanding such release and declaring the same a defect in said title when the plaintiffs failed and refused to procure a release of said lien. That as to plaintiffs' allegation in

reference to the deed of trust of Minor Stewart, as trustee, for the Houston Title & Guaranty Company, and the actual contract existing between the parties, and the consideration therefor, defendants said that they had no knowledge in reference thereto, but that at the time of closing the mortgage transaction between Sweeney and Corbett, the said Giles knew nothing about the contract and understanding by and between the said Corbett and said Houston Title & Guaranty Company, but that at the time of the contract of December 26, 1912, and at all times thereafter, said deed of trust constituted a defect upon the record title, and a cloud upon the title of the plaintiffs to said land.

Replying to the allegations of plaintiffs in reference to the contract of Corbett with Glasscock, Jump, et al., in no way affecting title to the Samuel Young survey, defendants denied the legal conclusion alleged by plaintiffs that said contract did not affect the title to said land, and in reference thereto defendants again set out the facts and conditions showing the relations between Corbett and the Union Land Company and the identity of the corporation with Corbett, for the purpose of showing that Corbett was the real owner of said land, and was authorized to act for the Union Land Company in making said contract with Glasscock et al., and they denied that said contract did not refer with sufficient certainty to the Samuel Young survey in order to identify the same, and they said that said contract and the claim thereafter and then being made thereunder by the said Glasscock and his associates constituted a cloud upon the title of the plaintiffs, and raised an issue of fact and of law between them and the said Glasscock and associates as to their respective rights under said contract which said defendant could not be forced to determine or pass upon at his own risk, and which the court could not determine in this case at the risk of the defendants, and defendants denied that the matter of said contract, and claim asserted thereunder, was never offered as an objection to said title until January 10th, and was not seriously asserted thereunder, but they said that said objection was called to the attention of the plaintiffs and their agent, Rowe, within a few days after said contract of December 26, 1912, and before January 10, 1913

The defendant Giles admitted that prior to said contract of December 26, 1912, he knew that a portion of said land had been platted and subdivided, and that sales had been made of portions of the same with reference to said map, but that he did not know the legal effect of said plat and subdivision, and the sale of portions of land in reference thereto, and did not know that after small tracts had been sold in reference to the streets and roadways indicated thereon that the same thereby became dedicated to public use, and did not know that the offer of said land for streets and roadways as indicated on

said plat could not thereafter at any time by the owner of said land be withdrawn, and said land again appropriated to the private and exclusive use of himself and his vendees, and he said that he did not purport to know or determine such questions of law affecting the title to said real estate, and for that reason it was provided in said contract that the questions of law affecting the title to said land should be submitted to the said E. R. Campbell, as an attorney, and that the title should meet with the approval of said attorney before he should be required to accept the same.

The said Giles denied that he knew at the time of said contract that the judgments against the said Corbett heretofore referred to were in existence, and alleged that even if he had known, he would not by the execution of said contract have waived the right to demand and insist, as he did, that said judgments should be released before he should be called upon to accept the title of said land as good, and to consummate the purchase thereof, and he denied it was contemplated at the time of said contract by the parties thereto that such judgments should be paid off by the purchase money coming to plaintiffs from him under said contract, but said that thereafter when the matter of said judgments was mentioned, the said Corbett denied that said judgments affected the title of said land, but claimed that said judgments were against him individually, and that the title of said land stood in the Union Land Company, and these said judgments constituted no defect in said title or objection thereto; that the objection urged by the said Campbell that said judgments constituted a lien upon said land and a defect in the title thereto was a valid objection, made in good faith, and even if it had been contemplated by the parties at the time of said contract that said judgments should be paid out of the purchase money, that nevertheless there was no obligation upon the part of the said Giles to purchase said titles subject to said liens, and thereafter undertake the trouble, worry and expense of procuring and requiring releases thereof, but that he had a right to demand, as he did, that said judgments be paid off and released, and the releases thereof delivered or recorded before he could be called upon to perform said contract, and that the fact that said judgments had never been paid off or released to the present time showed that the plaintiffs had never put themselves in a position to comply with their said contract and to demand of the said Giles a compliance therewith. That it was true that the said Giles was acquainted with the description of the land which was contained in the deed of trust from Corbett to Sweeney of date prior to the contract of December 26, 1912, and that his attorney was also acquainted therewith, but that at the time of the execution and delivery of said deed of trust, the said Corbett repre-

sented to the said Sweeney, and to the said Giles, who was then acting as the agent of said Sweeney in making said loan, and also to the said E. R. Campbell, who was then acting as attorney for the said Sweeney, that the land described in said deed of trust covered and included the improvements referred to in defendants' amended answer, and the land upon which the same was situated, and represented that the tracts excepted from the general description in said deed of trust did not include, and did not thereby constitute an exception from said deed of trust of, said improvements, and that when the contract of December 26th was made, the same land which had theretofore been covered by said deed of trust was covered by said contract, with the exception of some additional tracts being reserved therefrom in said contract, and that plaintiffs continued to represent that the land so excepted in said contract and in said deed of trust did not embrace the improvements referred to, but represented and induced the said Giles to believe that the land covered by said contract included said improvements, and knew that the said Giles and his attorney were relying thereon, and defendant Giles especially denied that he ever at any time agreed that if the plaintiffs would include within the land to be conveyed under said contract said improvements and the land upon which the same were situated, that he would accept the title as it stood, and close said trade, but he said that, while he at all times insisted that said improvements should be included within the land to be purchased by him, that he also at all times urged the other objections and defects to said title heretofore alleged by him as the reason why he should not be compelled to accept said land and the titles thereto as they then stood.

With reference to the deed to C. M. Diehl conveying lots 1, 2, and 3, in block 20, defendants said that it was true that the same was executed and delivered before the execution of said deed of trust of May, 1911, and also before the contract of December 26, 1912, but the defendant Giles said that neither he nor his attorney knew anything of said deed at the time the contract was signed, and that said deed was not shown in the abstracts which he or his attorney had for examination prior to said time, because said deed was not filed for record, and that they knew nothing about said deed until on or about January 23, 1915, and that because they were in ignorance of the same they did not urge it as an objection to said title while the said negotiations were in progress, but that had they known of the same they would have urged it as an objection, and that they had urged the same as an objection after learning of said deed, for the reason that it constituted a defect in and objection to the title of the land described in said contract of sale.

The defendant Giles denied that he ever at any time interfered with any sale of said property by the plaintiffs, but said that he had always been ready and willing and anxious that the plaintiffs should sell and dispose of said land, if they could dispose of the same for sufficient money with which to pay off the note held by him secured by a mortgage thereon, and he denied that he ever wielded any power over or committed any pressure upon the plaintiffs for the purpose of inducing them to enter into said contract of sale with him, but said that he only agreed to purchase said land under the terms of the contract of December 26, 1912, at the earnest and prolonged solicitation of the said Corbett, and as a favor to him, and that he had never been so anxious to purchase said lands as that he was willing to waive any of the defects of the title thereto and theretofore pointed out in his pleadings.

The defendant Giles said: That he was forced to declare said note defaulted and due and payable under the terms thereof, because the said Corbett failed and refused to pay the installments of interest thereon as the same became due, and failed to pay the taxes upon said land as the same became due, and permitted the same to become delinquent and penalties added to the same of 10 per cent. of the amount of said taxes, and that because of such defaults upon the part of said Corbett, piling up expenses and penalties which became a lien upon said land and increased the amount of indebtedness thereon, he was forced to and did declare the whole of said note due and payable. That it was true that the $2,000 which the said Corbett deposited with the district clerk in order to perfect his appeal in the cause of Corbett v. Sweeney, from the Eleventh district court, was thereafter awarded and paid to him by the district clerk, but that the same was applied by him as a credit upon the principal, interest, and attorney's fees due on said note, and the said Corbett had received the benefit of such payment, and that because of such payment and its credit under the decree of said court, there was no reason why said defendant should waive his right under said note to insist that the balance of the principal, interest, and attorney's fees thereon should be paid, and that it was for such reason that he was still insisting upon the payment of the same, and undertook to have the land sold under said deed of trust, for the purpose of discharging the balance due upon said note.

The case was submitted to a jury upon special issues, in answer to which the jury found as follows:

(1) It was agreed by and between Corbett and Giles that the Rand lien and notes were to be satisfied either out of the purchase money to be paid by Giles under the contract or out of the deposit put up with the Houston Title & Guaranty Company.

(2) That there was no agreement between Corbett and Giles that the deed of trust on the Samuel Young survey should and would be foreclosed by Giles and Campbell and the land sold thereunder for the purpose of removing the objection to the Glasscock-Jump contract.

(3) That it was not agreed between Corbett and Giles at the time of making the contract of December 26, 1912, that the judgment against Corbett should be paid off and discharged out of the purchase money to be paid by Giles under said contract.

(4) That it was agreed between Corbett and Giles, prior to the time the contract was declared off by Campbell, that said judgment against Corbett should be paid off and discharged out of the purchase money to be paid by Giles.

(5) That it was agreed between said parties that Corbett would comply with the requirements of Campbell as to the survey of the land to be conveyed by Corbett to Giles.

(6) That it was agreed between the parties that Corbett should comply with the requirement of Campbell as to payment of the taxes due on said land.

(7) That Campbell, attorney for Giles, at no time purported to point out to Corbett all the objections which he would urge to the title, or represent to him or his agent or attorney that upon compliance with his requirements for the removal of the objections urged by him he would approve the title to said land.

(8) That said contract was declared off by Campbell, for Giles, before Corbett had a reasonable time to meet the objections made by Campbell, and that Corbett would have met such objections made within a reasonable time had Campbell not declared the trade off.

(9) That before and at the time of the making of the contract of December 26, 1912, Corbett made representations and statements to Giles, or to the knowledge of Giles, which were reasonably calculated to induce Giles to believe that the ranchhouse and land on which the same is situated was included in the contract between Corbett and Giles, and that Giles believed from such statements and representations that the ranchhouse and land on which the same was situated was covered by said contract, but that Corbett did not make such statements and representations with the intention that the same should be relied and acted upon by Giles as an inducing consideration for him to make said contract, and that they were not such.

(10) That said statements and representations so made were material inducements to the making of said contract by Giles.

(11) That this act of Campbell in declaring "off" the contract of December 26, 1912, was due to some extent, but not entirely, to the fact that the ranchhouse, other improvements and lands connected therewith were not included in said contract.

(12) That the act of Campbell in declaring

"off" the contract was not, in any degree, due to the refusal of Corbett to comply with the requirements made by Campbell in connection with the title and survey of the land.

Defendants by proper motion requested the court to render judgment in their favor, upon the findings of the jury above set out. This request was by the court refused, and judgment was thereupon rendered for the plaintiffs, decreeing specific performance of the contract of December 26, 1912, the issuance of a perpetual injunction restraining appellants from selling or attempting to sell said lands under the deed of trust given by Corbett to Giles, and further decreeing, substantially, as follows:

"It further appearing to the court that the defendant William Giles requested a survey of the lands covered by said contract, and that he selected Howe & Wise to make the survey of the said land described in said contract of December 26, 1912, and that plaintiffs agreed thereto, it is ordered, adjudged, and decreed by the court that the defendant William Giles shall cause the said Howe & Wise, who are hereby appointed by the court for such purpose, to survey or measure the said land and ascertain and compute the number of acres embraced and included in said contract, and it is further considered by the court, and so ordered, adjudged, and decreed, that plaintiffs shall, within 45 days from the making of such survey, tender to the defendant William Giles, or into this court for said defendant William Giles, a general warranty deed of the Union Land Company, and a quitclaim deed of W. C. Corbett and wife, as provided in said contract of December 26, 1912, to the lands therein described, being all of the Sam Young survey of 794 acres in Harris county, Tex., and the east one-half of the James Brewster survey in Harris county, Tex., except certain town lots and farm blocks out of the two last-mentioned surveys as follows: [Here follows a list of lots excepted.] Being all the said Sam Young survey and that part of the Evan Thomas survey and the east one-half of the James Brewster survey, which is covered by a deed of trust dated May 30, 1911, to J. J. Sweeney, and recorded in volume 96, page 543, of the Mortgage Records of Harris county, Tex., except the following town lots: [Here follows list of lots excepted.]

"And the said plaintiff shall also within said time tender to the said defendant Giles, or into this court for said Giles, properly executed, releases of all judgments against W. C. Corbett, mentioned and referred to in defendant's first amended original answer, same being as follows: [Here follows a description of the judgments pleaded against Corbett by Giles in his answer, eight in number.] Plaintiffs shall also within said time tender to said Giles a release from O. C. Glasscock, J. W. Jump, L. W. Dallas, and C. E. Gentry, releasing all their claims under a contract entered into between them and the plaintiff W. C. Corbett on or about October 25, 1912, for the sale of the Sam Young survey referred to in said contract of December 26, 1912, and referred to also in defendants' first amended original answer; and it is further ordered, adjudged, and decreed by the court that the defendant William Giles, upon such tenders being made, shall forthwith pay to the plaintiffs $15 per acre for each and every acre so ascertained by the survey hereinafter provided for, to be covered by the said contract of December 26, 1912, together with interest from January 10, 1913, at the rate of 6 per cent. per annum upon the balance of the purchase price of said lands after deducting therefrom the amount of

principal, interest, and attorney's fees, to be paid on the notes held by the defendant William Giles as hereinafter provided. Said amount of $15 per acre and interest to be paid in the following manner, that is to say, by deducting from said purchase price:

"(1) The principal sum of the note being for $22,500 given by W. C. Corbett to J. J. Sweeney on the ———— day of May, 1911, which note is now owned by the defendant Giles, and secured by a deed of trust on that part of the land covered by the contract which is located in the Evan Thomas survey and the Brewster survey.

"(2) All interest unpaid on said note up to the 5th day of January, 1913.

"(3) Ten per cent. upon the full amount of said principal and said interest, being the attorney's fees mentioned in said contract.

"(4) The sum of $4,750 of the principal sum of a note given by said Corbett to said J. J. Sweeney on the 30th day of May, 1911, which note is now owned by the defendant Giles, and secured by a deed of trust on the Sam Young survey, mentioned in said contract, and other lands.

"(5) All unpaid interest on said sum of $4,-750 up to the 5th day of January, 1913, all of which amounts above mentioned may be kept and retained by the said Giles, and said $22,500 note shall by him be turned into court for cancellation, and the other note shall be credited by him with the payment of said sum of $4,750 as of date January 10, 1913.

"(6) All amounts unpaid on the judgments against the plaintiff W. C. Corbett, which are hereinbefore mentioned and set out, shall be paid by said defendant Giles to the owner of said judgments, or into the registry of this court for their use and benefit, provided that should the plaintiffs be unable to procure for the purpose of a tender to said defendant William Giles the release of any of said judgments by reason of any of said judgment owners declining to execute such release, until the amount due on such judgment is tendered, then the said Giles shall make the requisite tender to said judgment owner, it being the purpose of this decree to require payment of such judgments out of the purchase money of said land, which the said defendant Giles is hereby ordered to do.

"(7) All taxes unpaid upon the lands and premises covered by said contract for any year prior to the year 1913 shall be paid by said defendant Giles to the tax collector of Harris county, Tex.

"(8) The costs and expenses of making the survey of said lands hereinbefore mentioned and provided for shall be paid by said defendant Giles, and one-half of such costs and expenses shall be charged to plaintiffs and deducted from the purchase price of said lands.

"(9) The cost of recording all releases hereinbefore referred to shall be charged to plaintiffs and deducted by said Giles from said purchase price of said land.

"(10) The said defendant William Giles shall also convey to the plaintiffs by general warranty deed lot 12, in block 216, on the S. S. B. B. in the city of Houston, Harris county, Tex., being the same property in said contract of December 26, 1912, contracted to be conveyed to plaintiffs.

"The balance due and owing the plaintiffs by the said defendant Giles on the purchase price on the said lands and premises and interest as hereinbefore provided, after crediting on the full amount thereof all amounts paid for the use and benefit of plaintiffs as above provided, including therein the sum of $3,500 allowed for the conveyance to plaintiffs of said lot 12, in block 216, shall be forthwith by said defendant Giles paid over to plaintiffs or into the

registry of this court for the use and benefit of plaintiffs.

"It is further ordered, adjudged, and decreed by the court that should the defendant Giles fail to make the said payment as hereinbefore provided, forthwith upon the return of said survey, to the persons hereinbefore designated to receive the same, then and in that event he shall forthwith pay into the registry of this court the full amount of the purchase price of said land, except such part of said purchase price as is due and owing him as hereinbefore provided, and the clerk of this court shall disburse such money in accordance with the terms of this decree.

"Upon the compliance by said defendant Giles of the foregoing provisions, and making such payments and making the said conveyance, the injunction herein granted shall be of no further force and effect as to the lands covered by said contract of December 26, 1912, and the said defendant shall have the right to proceed to sell the said lands included and embraced in said contract, under the said deeds of trust hereinbefore referred to.

"It further appearing to the court that upon the furnishing of the said releases as aforesaid, the plaintiffs will have complied with all requirements of defendant as to said title, and their title to said land will be a good and marketable one, and said plaintiffs will be entitled to recover of and from the said defendant Giles the house and lot mentioned in said contract of December 26, 1912, to wit, lot 12, in block 216, on the south side of Buffalo bayou, in the city of Houston, Harris county, Tex., and said Giles is ordered to convey same to plaintiffs by general warranty deed, and plaintiffs will be entitled to recover from said defendant Giles the sum of $15 per acre for each acre of land embraced and included in said contract of December 26, 1913, less the amounts to be deducted from such purchase price, as hereinbefore provided, and the said plaintiffs shall be entitled to recover also from the said defendant William Giles interest at the rate of 6 per cent. per annum upon the purchase price of the said lands and premises, after deducting therefrom the amount of principal and interest up to January 5, 1912, and attorney's fees, upon the said note of $22,500, as above provided, and the said sum of $4,750 above mentioned, and all interest upon same up to the 5th day of January, 1913, the interest to be paid by said defendant Giles to plaintiffs, to be computed from the 10th day of January, 1913, and upon the performance by the said plaintiffs of the conditions hereinbefore imposed upon them, the said right to recover the lot 12, in block 216, and improvements thereon, and the balance of the purchase money on the lands embraced in said contract of December 26, 1912, and interest thereon, as above provided, shall become absolute, and be and hereby is in such event established as a just claim and demand in favor of the plaintiffs against the defendant William Giles, and such claim and demand is adjudged and decreed to be and constitute a good and valid lien upon the said lands and premises embraced, referred to and described in the said contract of December 26, 1912, and the plaintiffs will be entitled to a release of the said deeds of trust as to all property covered by same except that ordered to be conveyed to said Giles by this decree, and except the Ft. Bend county lands, and said Giles shall deliver such release to plaintiffs, and in default thereof this decree shall operate as a release of all lands covered by said deeds of trust and not herein decreed to be conveyed to said Giles.

"It is further ordered, adjudged, and decreed by the court that should the plaintiffs fail or be unable to tender a release of the said contract for the Sam Young survey entered into between said Corbett and said Glasscock, Jump, Dallas, and Gentry, hereinbefore mentioned, within the time above provided for such tender, the plaintiffs shall not in such event be considered in default, but in such event the defendants shall have the right to foreclose the deed of trust on said Sam Young survey, and acquire a title thereto in such manner, and shall be entitled to deduct from the said purchase price of said land the sum of $250 to cover the attorney fees in such foreclosure proceedings, and such foreclosure shall take the place of said release.

"It is further ordered, adjudged, and decreed by the court that should said Howe & Wise fail or refuse to make and return said survey within 45 days from this date, plaintiff shall have the right to select a surveyor to survey said land, and make return of such survey as hereinbefore provided, and thereupon said land shall be paid for at $15 per acre upon such survey as hereinbefore provided.

"It is further ordered, adjudged, and decreed by the court that none of the times fixed herein for performance shall be of the essence of this decree, provided the persons charged with performance in good faith with reasonable diligence are endeavoring to perform, and that should this decree be appealed from, the times herein mentioned for the performance of this decree shall run from the date of the final judgment on appeal.

"That all parties to this cause shall have all such writs, process, and orders as may be necessary or requisite to enforce this decree."

By appellant's twelfth assignment they contend that:

"The court erred in refusing to give to the jury the charge requested by the defendants instructing the jury to return a verdict in behalf of the defendants, because the contract between the plaintiffs and the defendant Giles provided that the acreage and title of the land referred to therein was to be subject to the approval of E. R. Campbell, and the evidence showed conclusively that the plaintiffs had never caused a survey of the land to be made, as requested by the said Giles and the said Campbell, for the purpose of determining the exact acreage of said land, and because the evidence showed conclusively that the said Campbell had refused to approve the title to said land because of certain defects therein and objections thereto which had never been cured or met or waived, such as the Glasscock and Jump contract with Corbett, etc., and that there were other defects in said title, as pleaded by the defendants, existing at the time of trial, making the same unmarketable, such as plat dedicating streets and roadways, and deed of trust in favor of Houston Title & Guaranty Company, and outstanding title to lots 1 and 2, in block 20; and because the evidence failed to show the exact quantity of land covered by said contract, making it impossible for the jury to find or the court to adjudge the amount of the purchase money which the defendant Giles should pay under said contract, and it therefore made it impossible for the court to decree a specific performance of said contract by the defendant Giles and payment by him to the plaintiffs of any certain or specific amount as the purchase price therefor; and because the evidence failed to show that the plaintiffs had ever been ready, willing, and able, and were at the time of the trial able to comply with and perform said contract and deliver a marketable title to said lands."

Many interesting questions are raised and discussed in appellants' brief to which our attention has been invited, but believing that a consideration and proper disposition of the questions presented by appellants' twelfth assignment will dispose of all the issues necessary to a disposition of this appeal, we

refrain from discussing the other questions presented.

The undisputed evidence, the admissions of appellee, and findings of the jury, taken as a whole, show that appellees agreed and contracted with appellant Giles to furnish him an abstract of title to the land in question prior to January 10, 1913, which should show a title to said land in appellees satisfactory to E. R. Campbell, attorney for Giles; that appellees were to also have a survey of said land made by Howe & Wise, parties selected or designated by Giles to make the same, and that the acreage thus ascertained was to be subject to the approval of said Campbell; that appellees were to pay all taxes due on said land including the year 1912; that appellee Corbett made statements and representations to appellant Giles, prior to the making of said contract of December 26, 1912, which induced Giles to believe that the ranchhouse and other improvements and land upon which they stood were included in the properties covered by said contract; and that said properties are of the value of $1,500 or more. The jury further found, however, that Corbett did not intend that such representations should be relied and acted upon by Giles as material inducing considerations for him to make the contract and that they were not.

It is also further shown by the undisputed evidence that appellees did not furnish the abstract above mentioned until January 18, 1913; that at no time prior to the time Campbell declared the said contract at an end, nor at any time thereafter, up to the time of the trial of this cause, did appellees have Howe & Wise to survey said land as they had contracted to do; that all the defects and objections urged to the title of appellees to said land by Campbell, hereinbefore set out, existed when urged and practically all of them continued to exist up to the trial of this cause; that by reason of such defects in said title Campbell, in good faith, refused to approve said title, and that appellees have refused at all times to include, and did not include, the ranchhouse, other improvements and land connected therewith, in the deed of conveyance tendered to appellant Giles. The good faith of Campbell in refusing to approve said title is not attacked by any evidence, though it is argued that his act was arbitrary and unjustified, and therefore was not in good faith.

The contract upon which this suit is predicated is an executory contract, which required that appellees should tender to Giles a title to said land satisfactory to Campbell. This, we think, means at least a good merchantable title. Therefore, before appellees can demand specific performance of this contract, they must not only tender to appellant Giles a good title, but one clear of defects and incumbrances. Neither party to an executory contract can enforce specific performance by the other without showing that he has fully performed his part of the contract, or is ready and able to do so. Roos v. Thigpen, 140 S. W. 1180 (writ of error denied); Hurt v. McReynolds, 20 Tex. 599; Baldridge v. Cook, 27 Tex. 565; Greer v. Int. Stockyards Co., 43 Tex. Civ. App. 370, 96 S. W. 82; Green v. Chandler, 25 Tex. 148; Vardeman v. Lawson, 17 Tex. 16; Tharp v. Lee, 25 Tex. Civ. App. 439, 62 S. W. 93; Maupin on Marketable Titles, pp. 705 to 711, also pages 715, 721, and 786; Dunlap v. Wright, 11 Tex. 597, 62 Am. Dec. 506. In Maupin on Marketable Titles, p. 786, it is said:

"It seems that incumbrances upon the purchased premises which do not appear by the record to have been satisfied will render the title doubtful or unmarketable, even though the vendor be able to show by parol testimony that they have been satisfied. They constitute a cloud upon the title which the vendor should remove before calling upon the purchaser to complete the contract."

In Hurt v. McReynolds, 20 Tex. 600, it is said:

"It is familiar law that the general principles of the contract of sale, both in England and in this country, recognize and enforce, while it is still executory, the right of the purchaser to a title clear of defects and incumbrances. This right is one, not growing out of the agreement of the parties, but which is given by law; and it naturally follows that a court of equity will not decree the specific performance of a contract when the title is bad, or even, as it has been said in modern times, where it is doubtful."

In Baldridge v. Cook, 27 Tex. 570, it is said:

"The distinctions between executed and executory contracts for the sale of land are recognized and clearly defined by this court in the case of Cooper v. Singleton, 19 Tex. 260 [70 Am. Dec. 333]. The general rule enunciated in that case, that so long as the contract remains executory the purchaser shall not be compelled to pay the purchase money and take a defective title, has been uniformly sustained and followed in the subsequent decisions of the court (Hurt v. McReynolds, 20 Tex. 595), and other cases in manuscript not yet reported, and must now be regarded as settled law in this court."

[1] We think the contentions of appellants presented by their twelfth assignment should be sustained. Appellant Giles contracted for and had the right to demand at least a marketable title, subject to the approval of his attorney, E. R. Campbell, one free from defects and incumbrances, and not one loaded down with uncertain liens and lawsuits and adverse claims.

[2] After a careful examination and consideration of all the evidence we have reached the conclusion that the title tendered by appellees fell far short of meeting the requirements of the title contracted for by appellant Giles. Appellees had by their contract agreed to convey, and the appellant Giles had agreed to accept, only a title which, in the opinion of E. R. Campbell, was a good title, and as the parties have bound themselves by said contract so shall they be bound, and the trial court had no power or authority to require the appellant Giles to do and perform the things appellees had

contracted to do to perfect their title to said land; and to thus himself undertake the probably uncertain, expensive, and long drawn out process of extricating that title from then known complications. It cannot be seriously insisted that by Campbell's declaring the contract at an end in March, 1913, appellees were prevented from tendering Giles a title clear of defects prior to February, 1915, the time of the trial of this cause. We fail to find evidence of any wrongful act done by either Giles or his attorney which would in any manner tend to hinder appellees from removing or attempting to remove the defects in the title to the land, urged by Campbell. We therefore conclude that the trial court erred in not instructing a verdict for appellants as requested.

[3] We may add to what has already been said that an agreement on the part of the vendor that the title tendered shall be satisfactory to the attorney of the vendee will justify the purchaser in refusing to accept the title tendered if the attorney in good faith, and not capriciously, declares himself dissatisfied with such tendered title. Maupin on Marketable Titles, p. 726; Atwood v. Fagan, 134 S. W. 765.

In the last case cited, the court held that where a contract for the sale of land stipulated that the vendor should furnish an abstract of title showing a merchantable title to the satisfaction of the vendee's attorney, in the absence of bad faith the decision of the attorney would be decisive. The rule is thus stated in Ruling Case Law, vol. 6, p. 956, § 335:

"In cases of this character the approval of the party so designated becomes a condition precedent to a recovery for the price. In the absence of fraud or bad faith in the conduct of such party, in respect of the fact of his approval or the withholding it, his judgment or determination is to be accepted as final and conclusive. No mere error or mistake of judgment will vitiate his determination. The very object of his appointment is to prevent and exclude contention and litigation; and hence nothing short of fraud or mala fides in the exercise of his power to reject or approve the article contracted for will dispense with the strict legal effect of the condition precedent." Church v. Shanklin, 95 Cal. 626, 30 Pac. 789, 17 L. R. A. 207, and note; Lynn v. Baltimore, etc., R. Co., 60 Md. 404, 45 Am. Rep. 741; Baltimore, etc., R. Co. v. Brydon, 65 Md. 198, 3 Atl. 306, 9 Atl. 126, 57 Am. Rep. 318; Nofsigner v. Ring, 71 Mo. 149, 36 Am. Rep. 456; Livesley v. Johnston, 45 Or. 30, 76 Pac. 13, 946, 65 L. R. A. 783, 106 Am. St. Rep. 647; Barrett v. Raleigh Coal Co., 51 W. Va. 416, 41 S. E. 220, 90 Am. St. Rep. 802; Oakes v. Moore, 24 Me. 214, 41 Am. Dec. 379.

[4] While what we have already said sufficiently disposes of the issues presented by this appeal, we think it appropriate to say that the judgment rendered by the trial court cannot be sustained in any event, because it is uncertain and indefinite, and is not susceptible of being made certain and enforced by any writ of execution or other writ that may lawfully issue thereunder against the defendant Giles, in that the amount of the purchase price which Giles is adjudged to pay is not determined and fixed, and cannot be made certain or definite without first ascertaining other and additional facts than those shown by the evidence or found by the court or jury, and because the amount which is decreed to be paid by Giles, to creditors of Corbett, or deposited with the clerk of the court for their benefit is not fixed or made certain, and cannot be made certain without first ascertaining and adjudicating other and additional facts than those shown by the evidence or found by the court or jury. Spiva v. Williams, 20 Tex. 442; Roberts v. Landrum, 20 Tex. 475; Barnett v. Caruth, 22 Tex. 174, 73 Am. Dec. 255; Mussina v. Goldthwaite, 34 Tex. 132, 7 Am. Rep. 281; So. Oil Co. v. Wilson, 22 Tex. Civ. App. 539, 56 S. W. 429; Eastham v. Sillis, 60 Tex. 580; Wells v. Arno Co-Oper. Irr. Co., 177 S. W. 986. We deem it unnecessary to further discuss the issues presented by appellants' brief, as what we have already said disposes of all of them, as well as the cross-assignments of the appellees.

Believing that the facts of the case have been fully developed, and that under the contract entered into by the parties, appellant Giles was justified in refusing to accept the conveyance tendered to him by appellees, we hold that the judgment rendered by the trial court should be reversed, and judgment here rendered in favor of appellants; and it is so ordered.

Reversed and rendered.

LANE, J., being disqualified, did not sit in this case.